Young v. Plymouth State        CV-96-75-SD    10/22/98
            UNITED STATES DISTRICT COURT FOR THE

                    DISTRICT OF NEW HAMPSHIRE


Leroy S. Young;
Tatum Young


        v.                              Civil No. 96-75-SD

Plymouth State College;
University System of
 New Hampshire;
Donald P. Wharton


                        O R D E R


    At the request of the parties, this court has set a

scheduling conference in this case for the morning of November 2,

1998.  In the course of such conference, the court will establish

deadlines for discovery and the filing of dispositive motions.

See Order of August 12, 1998, document 24, at 4.

    In the interim, however, counsel for the respective parties

have filed a plethora of motions.  Although the court abhors the

issuance of piecemeal orders, it here rules on certain of those

motions.[1]

_____

    [1]Excluded from this order are any rulings on plaintiffs'
first motion to compel, document 31, and plaintiffs' motion for a
protective order regarding plaintiffs' depositions, document 34.
The reason for deferment of any rulings on these motions is that

## 1. Defendants' Motion to Hold Status Conference, document 26

This motion is denied because, as the court has above indicated, it has already set a scheduling conference on November 2, 1998.

## 2. Defendants' Motion to Limit Discovery Requests, document 27

Defendants argue that plaintiffs' discovery should be limited on the grounds that it is excessive and imposes undue burdens. Plaintiffs object. Document 33.

Concerning the interrogatories propounded by plaintiffs, the parties indicate that negotiations are ongoing with respect to the supplementation of the answers thereto. Accordingly, it does not appear that the court is required to rule on that issue.

With reference to the requests for production of documents, however, defendants are mistaken in their argument that Rule 33, Fed. R. Civ. P., somehow imposes a limit on the number of such requests. Requests for production of documents fall within the scope of Rule 34, Fed. R. Civ. P., which, in contrast to limitations placed on other forms of discovery, places no numeric limit on the number of requests. 7 MOORE'S FEDERAL PRACTICE § 34.02[3], at 34-11 (3d ed. Matthew Bender 1998). However, the

_____

the time for the defendants' responses thereto has not as yet arrived.

court may limit Rule 34 discovery in a particular case based on the specific criteria of Rule 26(b)(2). Id.

Here, however, the defendants have interposed only their erroneous argument that a numeric limitation bars certain of the requests, rather than raising the specific objections to each request mandated by Rule 34, Fed. R. Civ. P.

Accordingly, defendants' motion is denied. As the court may extend the time for filing responses under Rule 34, defendants are directed within 20 days of the date of this order to furnish plaintiffs with their objections or responses to each request for production that has not been answered.

3. Defendants' Motion to Compel, document 28; Plaintiffs' Motion for a Protective Order, document 29; Plaintiffs' Motion to Permit Contact with Defendants' Nonmanagerial Employees, document 30

The subjects of these motions, to which objections have been interposed, documents 32, 39, 38,[2] overlap somewhat. Basically, however, at issue are (a) the production of the medical records of plaintiff Leroy Young; (b) the interview by plaintiffs' counsel of Theodora Kalikow, former dean of academic affairs at

---

[2]Document 32 is plaintiffs' objection to defendants' motion to compel. Document 39 is defendants' objection to plaintiffs' motion for protective order. Document 38 is defendants' objection to plaintiffs' motion to permit contact with nonmanagerial employees.

3

defendant Plymouth State College (PSC); and (c) the request of plaintiffs' counsel to continue such interviews with nonmanagerial employees of PSC.

### (a) Production of Plaintiffs' Medical Records

Defendants' motion to compel, document 28, and plaintiffs' motion for protective order, document 29, deal in part with the desire of defendants to review the medical records of plaintiff Leroy Young. Plaintiffs feel that review of any records so produced should be limited and that former students of plaintiff who have in the past accused plaintiff of sexual harassment should be barred from reviewing such records.[3] Defendants are unwilling to execute a protective order in the form proposed by plaintiffs.

Protective orders are governed by the provisions of Rule 26(c), Fed. R. Civ. P., which states in pertinent part:

> Upon motion by a party or by the person from whom discovery is sought, . . . and for good cause shown, the court . . . may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . .

Plainly read, the language of Rule 26(c) imposes the burden of showing the existence of good cause or issuance of a protective

---

[3]Plaintiffs identify such former students as Tracy Schneider, Jennifer Otten, and Rose Marie Homeyer-Bente.

4

order on the party seeking such order. Public Citizen v. Liggett Group, Inc., 858 F.2d 775, 789 (1st Cir. 1988), cert. denied, 488 U.S. 1030 (1989). Accordingly, the issuance of such orders should not be routine, even in cases where the application is supported by all parties. Nault's Auto Sales v. American Honda Motor Co., 148 F.R.D. 25, 44 (D.N.H. 1993). However, the district courts have "'broad discretion' to decide 'when a protective order is appropriate and what degree of protection is required.'" Poliquin v. Garden Way, Inc., 989 F.2d 527, 532 (1st Cir. 1993) (citing and quoting Seattle Times Co. v. Rhinehart, 467 U.S. 20, 36 (1984)).

The dual thrust of plaintiffs' argument is that the medical records of Leroy Young are extremely sensitive and private in nature and that defendants somehow might misuse the records by furnishing them to Tracy Schneider. The court accepts the representation of plaintiffs' counsel, as an officer of the court, as to the nature of the medical records, but rejects plaintiffs' argument as to the suggestion of misuse thereof by Tracy Schneider or any other student who has formerly accused Leroy Young of sexual harassment.[4]

---

[4]Apparently, Tracy Schneider has claimed that she saw Leroy Young unclothed in his office while she was working on a project as a student at that time. Plaintiffs suggest that she might further elaborate on the details of such exhibition, denied by Leroy Young, if she were to view Young's medical records.

5

However, the court sees no reason why the medical records of Leroy Young should be exhibited to nonparties to this litigation or be used by other than defendants' counsel, defendants, and the employees and agents of defendants involved in the preparation and trial of this litigation. Accordingly, while the court herewith denies defendants' motion to compel in part and grants plaintiffs' motion for a protective order in part, it will issue its own protective order which it finds sufficient to protect the rights of the respective parties.

### (b)  The Interview of Ms. Kalikow

At times relevant to these proceedings, Theodora Kalikow was the dean of academic affairs at PSC. She apparently participated in the proceedings surrounding the discharge of Leroy Young. Subsequently, Ms. Kalikow removed to and became president of the University of Maine at Farmington, and it was there that she was contacted and interviewed by plaintiffs' counsel. Defendants' first notice of this interview came after the fact, when they were contacted by Ms. Kalikow.

---

However, the court has reviewed the deposition and trial testimony of Schneider and finds that, fairly read, it refers only to a brief glimpse by her of Young's nudity and that the suggestion she would elaborate on this testimony if allowed to view the medical records borders on the preposterous.

6

Defendants contend that under <u>Upjohn Co. v. United States</u>, 449 U.S. 383 (1981), plaintiffs' counsel should have been prevented from contacting Ms. Kalikow. Plaintiffs counter by contending that the issue is governed by Rule 4.2 of the New Hampshire Rules of Professional Conduct, which permits such contact.

In cases where, as here, both federal and state claims are advanced, the federal rule of privilege, rather than any state rule of privilege, is the controlling rule. <u>Coastal Fuels of Puerto Rico v. Caribbean Petroleum Corp.</u>, 830 F. Supp. 8081 (D.P.R. 1993); <u>O'Neil v. Q.L.C.R.I., Inc.</u>, 750 F. Supp. 551, 557 (D.R.I. 1990).

These rules are accordingly governed by Rule 501, Fed. R. Evid.,[5] and, as defendants correctly point out, by the decision in <u>Upjohn Co. v. United States</u>, <u>supra</u>, which rejects the "control group" test followed by New Hampshire Professional Rule 4.2.

---

[5]Rule 501, Fed. R. Evid., provides in pertinent part,

> Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. . . .

7

Among the factors which the Upjohn court ruled to be persuasive in finding whether an employee falls within the scope of the attorney/client privilege are:

1. The communications were made by employee to the organization's lawyer in order to assist the organization in obtaining legal advice or pursuing a legal course of action;

2. The employee was cooperating with the organization's lawyers at the direction of his or her supervisors;

3. The communications concerned matters within the employee's scope of employment; and

4. The information was not available from upper-level management.

As Ms. Kalikow was, while serving as dean of academic affairs, well within the scope of these factors, and had communicated with counsel and other upper-level management officials and employees at PSC regarding the circumstances giving rise to the instant litigation, the court finds that counsel should not have attempted to contact Ms. Kalikow without permission from counsel for the defendants. Accordingly, it is herewith ordered that, within 20 days of the date of this order, counsel for plaintiffs shall turn over to the defendants all notes, tapes, memos, or other materials produced in the course of

8

his interview with Ms. Kalikow.  Defendants' motion to compel is accordingly granted in part insofar as it concerns Ms. Kalikow.

### c.  The Motion to Permit Contact with Defendants' Nonmanagerial Employees, document 30

From what has been written in section 3(b) above, it follows that plaintiffs' counsel may not freely contact employees of PSC who might have information helpful to the preparation of plaintiffs' case without advance permission from the defendants. It may be that there are employees who do not fall within the attorney/client privilege as above outlined, in which case there should be no reasonable objection to their interview by plaintiffs' counsel or investigators.  To resolve the conflict, however, it is necessary that defendants' counsel be apprised in advance of those prospective witnesses whom plaintiffs desire to interview.

Accordingly, it is ordered that within 20 days of the date of this order plaintiffs furnish defendants' counsel with a list of such proposed witnesses.  Within 20 days thereafter, defendants' counsel is to apprise plaintiffs' counsel as to any of the prospective witnesses that it is believed fall within the attorney/client privilege so that appropriate motions may be made

9

seeking to resolve any disputes concerning the issue of such privilege.

## 4. Motion of Nonparty Seeking to Quash Subpoena, document 37

This motion was filed by counsel for Rose Marie Homeyer-Bente, and seeks to quash a subpoena served upon her which commands production of 50 separate classifications of documents. Plaintiffs object. Document 40.[6]

Ms. Homeyer-Bente (Bente) claims that the information requested by the subpoena imposes an unreasonable and unduly expensive burden upon her and seeks materials protected by various privileges. Rule 34(c), Fed. R. Civ. P., provides that the production of documents by nonparties to litigation is governed by the provisions of Rule 45, Fed. R. Civ. P. And Rule 45(c)(3)(A)(iii) provides that a subpoena be quashed or modified if it "requires disclosure of privileged or other protected matter."

Plaintiffs have requested, and the court has reviewed, each of the 50 items sought by the subpoena. In those instances

---

[6]The motion to quash was filed here on October 15, 1998. The subpoena at issue required production by 9:00 a.m. on October 16, 1998. However, plaintiffs' counsel agreed that no further action would be taken by him to compel compliance with the subpoena until the court had had an opportunity to review and rule on the motion and plaintiffs' objection thereto.

10

hereafter where the court finds any of these materials to be producible, the court finds and rules that Bente's counsel and/or Bente should be entitled to reasonable compensation for the cost of reproducing any of such materials.[7]

Items sought by plaintiffs in paragraphs 1, 2, 3, and 4 comprise correspondence, documents, and other matters provided by Bente and others, including her attorneys, to plaintiffs and their representatives (1); from plaintiffs to Bente or others, including her attorneys (2); from Bente and others, including her attorneys, to the defendants in this case (3); and from any defendant named in this case and others, including their attorneys, to Bente and her representatives, including her attorneys (4). Concerning items 1 and 2, these materials should all be in the possession of plaintiffs, inasmuch as they concern materials transmitted to and from the plaintiffs. As to items 1, 2, 3, and 4, on their face they run afoul of the attorney/client and work product privileges, and, accordingly, the motion to quash is granted as to items 1, 2, 3, and 4.

Items 5 and 6 seek materials transmitted to Bente from Tracy Schneider and Jennifer Otten, and the court finds that, if such

---

[7]As used herein, "reasonable compensation" means the cost of reproduction at the lowest rate charged by Bente's counsel in copying materials for opponents or other parties in other types of litigation.

materials exist in the possession of Bente, they should be produced.

Item 7 concerns Bente's files and documents concerning her education at PSC, and any such materials available should be produced. Item 8 seeks production of all of Bente's materials regarding her alleged sexual harassment by plaintiff Leroy Young. Such materials should be produced. Items 9 and 10 seek materials concerning the high school and post-high-school educational experience of Bente, together with her transcripts from PSC and any other post-high-school school, college, or university which she attended. Insofar as Bente possesses any of these materials, they should be produced, and if such are not in her possession but are available at PSC, the necessary authorizations, when furnished by plaintiffs, should be executed for their production. Item 11 request production of psychological, psychiatric, and counseling records. These records are privileged under federal law, Jaffee v. Redmond, 518 U.S. 1, 8-18 (1996), and, accordingly, the motion to quash is granted as to item 11. Items 12, 13, 14, 15, 16, and 17 seek investigative reports and records concerning complaints of sexual harassment by Bente (12); Otten (13); Schneider (14); any entity concerned with investigation of sexual harassment by Leroy Young (15); materials prepared by any entity charged with investigating or disciplining Young in

connection with Schneider's complaints (16); and similar materials in connection with Otten's complaints (17). Insofar as Bente is possessed of any such records, and such are not part of any of her attorney's work product, these records should be produced.

Items 18, 19, 20, 21, and 22 seek all pleadings (18), discovery (19), depositions (20), trial transcripts (21), and settlement documents (22) concerning Bente's Grafton County Superior Court lawsuit against Leroy Young. Up to the time only that Bente withdrew from such litigation, such materials are producible.

Item 23 seeks materials possessed by, prepared by, or received by any student or former student relative to Schneider's complaints and Leroy's dismissal. Insofar only as Bente possesses any such material, it will be producible.

Items 24 and 25 seek production of hard copies of e-mail (24) and notes, memoranda, tapes, or other memorializations possessed by, prepared by, or received by Bente from any source (25) concerning the matters at issue in this litigation. Insofar only as these materials do not run to and from Bente and her attorneys and are otherwise in her possession, they are found to be producible.

Items 26, 27, and 28 seek production of any materials provided by PSC to Bente while a student thereat on the issue of sexual harassment (26); a list of all campus groups with which Bente was affiliated or whose functions she attended involved with issues of sexual harassment, feminism, sexual orientation, and women's rights while she was a student at PSC (27); and documents and materials received by Bente from any campus groups identified in response to request number 27 (28).[8] These items are producible.

Items 29, 30, 31, and 32 seek course materials for courses taken by Bente at PSC (29); course syllabi for each course (30); and reading lists for each such course (31); together with a listing of each professor or instructor who taught Bente while she was a student at PSC (32). Insofar as any of these items are in the possession of Bente, they are producible.

Item 33 seeks listing of the time, date, and place of any seminar, speaker, forum, or other public offering at PSC attended by Bente while a student thereat wherein sexual harassment was discussed or was a topic. This material is producible. Items 34, 35, 36, 37, and 38 seek, respectively, term papers, theses, and final exams of Bente for all courses she took at PSC (34);

---

[8]As written, request no. 28 refers to materials produced in response to request no. 39. This is obviously an error, and the correct reference should be to request no. 27.

artwork and photography produced by her for all courses taken at PSC (35); gifts, including but not limited to books, clothing, jewelry, and other items allegedly given her by Leroy Young (36); gifts allegedly given by her to Leroy Young (37); and receipts, mailing labels, packaging material, documents, or other correspondence relating to any gifts allegedly given her by Leroy Young (38). Insofar as any of these items are in the possession of Bente, they are producible. With respect to any of such items not within her possession, but which are in the possession of PSC, Bente may execute an authorization furnished by plaintiffs' counsel for such items.

Request 39 seeks photos of any kind, including digital records, computer disks, and contact sheets of Leroy Young taken by Bente. These items are producible.

Items 40, 41, 42, and 43 seek, respectively, documents involving any claims or allegations made by Bente at any time that she had been sexually harassed by any faculty member, administrator, or agent of PSC other than Leroy Young (40); all press releases, statements, or other written or oral material provided to any third parties by Bente and others, including her attorneys, concerning Leroy Young in the matters at issue in this suit (41); the complaint or writ from any lawsuit brought by Bente against anyone at any time (42); and all materials and

15

documents concerning any complaints made by Bente while a student at PSC that Leroy Young had sexually harassed her (41). Insofar only as these materials are not within an attorney/client or work product privilege, they are producible.

Items 44 and 45 seek materials provided by Bente and others, including her <u>attorneys</u>, to the defendants in this litigation prior to the March 25, 1994, dismissal of Leroy Young (44) and subsequent to such dismissal (45). Insofar only as these items do not run afoul of the attorney/client or work product privilege, they are producible. Items 46 and 47 seek material provided by Bente to any person or entity other than plaintiffs, PSC, or its employees, concerning claims that Leroy Young sexually harassed Bente (46); and materials provided by Bente to any person or entity other than plaintiffs or PSC and its employees concerning claims of sexual harassment by Leroy Young and the matters at issue in this suit. Insofar only as these materials are not barred by the attorney/client or work product privilege, they are producible.

Item 48 seeks production of any diaries, journals, or similar documents maintained by Bente from 1987 forward. The court finds that these materials are such that they are producible only upon execution of a confidentiality order in a form satisfactory to Bente and her counsel. The responsibility

for preparation of such confidentiality order the court finds in the first instance rests on counsel for the plaintiffs.

Items 49 and 50 seek personal notes made by Bente concerning any of the matters at issue in this suit (49), and records concerning any arrest or conviction for a criminal offense (50). Again, the court finds these items to be producible only on execution of a confidentiality agreement prepared in the first instance by plaintiffs' counsel and acceptable to Bente and her counsel.

The court realizes that there is an amount of burden imposed upon Bente and her counsel in responding to this subpoena, but finds that such is not of the ilk that requires quashing of all items sought. See, e.g., Northrop Corp. v. McDonnell Douglas Corp., 751 F.2d 395, 404 (D.C. Cir. 1984).

5. Conclusion

For the reasons outlined, the court has denied defendants' motion to hold status conference (document 26), has denied defendants' motion to limit discovery requests (document 27), has denied in part and granted in part defendants' motion to compel (document 28), has granted plaintiffs' motion for a protective order (document 29), has denied plaintiffs' motion to contact nonmanagerial employees of PSC (document 30), and has denied in

part and granted in part the motion of Bente to quash subpoena (document 37).

The court is hopeful that in the future counsel, being adult and experienced at the bar, will be able to resolve discovery requests of the type here at issue without seeking further intervention from the court. Counsel should be prepared at the status conference on November 2, by having discussed in advance any remaining discovery problems, to present any such disputes to the court so that they may be resolved expeditiously without causing, as is here the case, the death of substantial parts of large forests.

SO ORDERED.

_____
Shane Devine, Senior Judge
United States District Court

October 22, 1998

cc:  Thomas F. Kehr, Esq.
     Michael D. Urban, Esq.
     Joseph M. McDonough III, Esq.
     Martha V. Gordon, Esq.
     John P. Fagan, Esq.